IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GREAT AMERICAN ALLIANCE INSURANCE COMPANY,<br><br>    *Plaintiff*,<br><br>V.<br><br>EDWARD RANGE III, SHARMONE HOSKINS, INDIVIDUALLY, AND RAYMOND JAMES TRUST, N.A., AS DEPENDENT ADMINISTRATOR OF THE ESTATE OF EDWARD RANGE IV, A DECEASED MINOR V. ROSCOE PROPERTIES, INC., ROSCOE PROPERTIES GP, LLC AND MONUMENT TIMBER RUN, LLC,<br><br>    *Defendants*. | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:20-cv-00691 |

## ORIGINAL COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT

Plaintiff Great American Alliance Insurance Company ("Great American") comes before this Court pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §2201, *et seq.*, seeking declaratory relief regarding the rights, status and legal relationship between Great American and Defendants Edward Range III, Sharmone Hoskins, Individually, and Raymond James Trust, N.A., as Dependent Administrator of the Estate of Edward Range IV, a Deceased Minor, Roscoe Properties, Inc., Roscoe Properties GP, LLC and Monument Timber Run, LLC.

### I.      DISCOVERY LEVEL

1.1    Great American intends to conduct discovery under Level III of TEX. R. CIV. P. 190.4.

### II.      PARTIES

2.1    Plaintiff Great American is an insurance company incorporated under the laws of the State of Ohio, with its principal place of business in Cincinnati, Ohio. Great American is authorized to do business in Texas and is conducting business in Houston, Harris County, Texas.

2.2     Defendant Edward Range III is a citizen of Texas whose principal residence and domicile is in Harris County, Texas.  He is the biological father of Edward Range IV ("Decedent").  He may be served with process through his attorney, Noah Wexler, Arnold & Itkin, LLP, 6009 Memorial Drive, Houston, Texas 77007.

2.3     Defendant Sharmone Hoskins is a citizen of Texas whose principal residence is in Harris County, Texas.  She is the biological mother of Decedent.  She may be served with process through her attorney, Noah Wexler, Arnold & Itkin, LLP, 6009 Memorial Drive, Houston, Texas 77007.

2.4     Defendant Raymond James Trust, N.A. is the Dependent Administrator of the Estate of Edward Range IV, a Deceased Minor and is thus a citizen of Texas.  28 U.S.C. § 1332(c)(2). Raymond James Trust, N.A. is a foreign financial institution which conducts a substantial amount of business in Houston, Harris County, Texas and has a principal office in Florida.  It may be served at its Houston office located at 500 Dallas Street, Suite 3400, Houston Texas 77002, or through its registered agent CT Corporation, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

2.5     Defendant Roscoe Properties, Inc. is a domestic for-profit corporation with its principal place of business in Houston, Harris County, Texas.  Roscoe Properties, Inc. may be served through its counsel of record, Andrew Sarne, Kane, Russell, Coleman, Logan, PC, 5051 Westheimer Road, 10th Floor, Houston, Texas 77056 or through its registered agent, Jason S. Berkowitz, 602 W. 7th St., Suite C, Austin, Texas 78701.

2.6     Defendant Roscoe Properties GP, LLC is a domestic for-profit limited liability company with its principal place of business in Houston, Harris County, Texas.  Roscoe Properties GP, LLC may be served through its attorney, Wayne Sanders, Sneed, Vine & Perry, 108 East 8th Street, Georgetown, Texas 78626 or through its registered agent, Jason S. Berkowitz, 602 W. 7th St., Suite C, Austin, Texas 78701.   The only member of Roscoe Properties GP, LLC is Jason

Berkowitz, who serves as President and Chief Executive Officer.  He is a resident/citizen of Texas, is domiciled in Texas, and may be served at his principal place of business at 602 W. 7th St., Suite C, Austin, Texas 78701.

2.7    Defendant Monument Timber Run, LLC is a foreign limited liability company that conducts a substantial amount of business in Houston, Texas and has its principal office in Florida. Monument Timber Run, LLC may be served through its attorney, Douglas T. Gosda, Manning, Gosda & Arredondo, LLP, 24 Greenway Plaza, Suite 525, Houston, Texas 77046 or through its registered agent, Paracorp Incorporated, 3610-2 Josey Lane, Suite 223, Carrollton, Texas 75007. The only member of Monument Timber Run, LLC is Monument Opportunity Fund I (Governing Person) and can be served at 5200 Blue Lagoon Drive, Suite 400, Miami, Florida 33126.  Stuart Zook (Owner), Erin Dolan Knight (President), and Gerardo Gato (Executive VP) are the governing members of Monument Capital Management.  Upon information and belief, all are residents/ citizens of Florida, are domiciled in Florida, and can be served at 5200 Blue Lagoon Drive, Suite 400, Miami, Florida 33126.

### III.    JURISDICTION AND VENUE

3.1    A justiciable controversy exists between Great American and Defendants as to the rights and obligations of the parties in connection with the insurance claim(s) tendered to Great American by Monument Timber Run, LLC (hereinafter, "Insurance Claim") arising out of *Cause No. 2018-88031; Edward Range III, Sharmone Hoskins, Individually, and Raymond James Trust, N.A., as Dependent Administrator of the Estate of Edward Range IV, a Deceased Minor v. Roscoe Properties, Inc., Roscoe Properties GP, LLC and Monument Timber Run, LLC; In the 61st Judicial District Court of Harris County, Texas* (the "Underlying Lawsuit").  Specifically, Great American

contends that the umbrella insurance policy at issue does not provide coverage for the claims asserted in the Underlying Lawsuit against its insured, Monument Timber Run, LLC.

3.2     Jurisdiction is proper because this declaratory judgment action is brought pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §2201, *et seq.*, and the amount in controversy exceeds the minimum jurisdictional limits of this Court.  The general aggregate limit under the Umbrella Policy at issue is $5,000,000.  The amount in controversy exceeds $75,000, exclusive of interest and costs, thus this Court has exclusive jurisdiction over this case.

3.3     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  Specifically, all or a substantial part of the events or omissions occurred which gave rise to the Underlying Lawsuit and the Insurance Claim occurred in this district.

## IV.     FACTS

4.1     The Underlying Lawsuit was originally filed on December 11, 2018 by Edward Range III, Individually and as Representative of the Estate of Edward Range IV and Sharmone Hoskins against Roscoe Properties, Inc. and Roscoe Properties GP, LLC.  Raymond James Trust, N.A. and Monument were added as parties in the Second Amended Petition which was filed on August 22, 2019 and restyled *Edward Range III, Sharmone Hoskins, Individually, and Raymond James Trust, N.A., as Dependent Administrator of the Estate of Edward Range IV, a Deceased Minor* (collectively, "Underlying Plaintiffs") *v. Roscoe Properties, Inc., Roscoe Properties GP, LLC and Monument Timber Run, LLC*.  *See* **Exhibit A**, Petition.

4.2     The Underlying Lawsuit is a wrongful death and survival action arising out of the drowning death of minor Edward Range IV on November 7, 2018 in the swimming pool of Timber Run Apartments located at 13000 Woodforest Blvd. in Houston, Texas 77015.  Timber Run Apartments

is owned, operated or managed by Roscoe Properties, Inc., Roscoe Properties GP, LLC, and Monument Timber Run, LLC ("Monument").

4.3     The Underlying Plaintiffs allege negligence, negligence *per se*, and gross negligence against Monument for:

- Failing to properly maintain its property;

- Failing to properly supervise its employees;

- Failing to hire, manage, train, and supervise competent employees;

- Failing to take appropriate and reasonable action to protect the decedent;

- Failing to provide adequate safety equipment;

- Failing to implement adequate safety policies and/or procedures;

- Failing to enforce adequate safety policies and/or procedures;

- Failing to have lifeguards on duty;

- Vicariously liability for the acts and/or omissions of their employees; and

- Other negligent, negligent *per se*, and/or grossly negligent acts/omissions.

4.4     The Underlying Plaintiffs seek damages for past and future pecuniary loss, loss of companionship and society, pain, mental anguish, medical expenses, funeral and burial expenses, and loss of inheritance.  The Underlying Plaintiffs also seek exemplary damages for willful, knowing, reckless or grossly negligent conduct.

4.5     Monument filed the Insurance Claim pursuant to Umbrella Policy #UM30119471 issued by Great American to Monument Timber Run, LLC d/b/a Timber Run Apartments with effective dates of January 11, 2018 to January 11, 2019 (the "Policy").  *See* **Exhibit B***,* Umbrella Policy. Monument requested a defense and indemnity from Great American arising out of the Underlying Lawsuit.

## V.   "EIGHT CORNERS" RULE

5.1     The duty to defend and the duty to indemnify "are distinct and separate duties," and one duty may exist without the other.   *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009) (quoting *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004)); *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997) ("[A]n insurer may have a duty to defend but, eventually, no duty to indemnify.").   An insurer's duty to indemnify is controlled by the "facts actually established in the underlying suit" against the insured and "whether the damages caused by the actions or omissions proven are covered by the terms of the policy."   *D.R. Horton-Tex.*, 300 S.W.3d at 744.

5.2     In determining whether an insurer has a duty to defend, Texas courts follow the "eight corners" rule.   *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014); *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012).   Under the eight corners rule, courts look to the facts alleged within the four corners of the pleadings, measure the facts alleged against the language within the four corners of the insurance policy, and determine if the facts alleged "present a matter that could potentially be covered by the insurance policy." *Ewing Constr.*, 420 S.W.3d at 33; *Evanston Ins.*, 370 S.W.3d at 380.   Courts will not read facts into the pleadings, nor look outside the pleadings or imagine factual scenarios that might trigger coverage.   *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 655 (Tex. 2009) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997)).   Courts consider the factual allegations without regard to their truth or falsity and resolve all doubts regarding the duty to defend in the insured's favor.   *Ewing Constr.*, 420 S.W.3d at 33.   In reviewing the pleadings, courts look to the factual allegations showing the origin of the damages claimed, not to the

legal theories or conclusions alleged. *Ewing Constr.*, 420 S.W.3d at 33; *Evanston Ins.*, 370 S.W.3d at 380. If the pleadings contain even one covered claim, the insurer must defend the entire suit. *Evanston Ins.*, 370 S.W.3d at 380; *Zurich Am. Ins.*, 268 S.W.3d at 491.

5.3     The insured has the initial burden to establish coverage under the insurance policy. *Ewing Constr.*, 420 S.W.3d at 33; *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). If the insured establishes coverage, then, to avoid liability, the insurer must prove that one of the policy's exclusions applies. *Ewing Constr.*, 420 S.W.3d at 33; *Gilbert Tex. Constr.*, 327 S.W.3d at 124. If the insurer proves the applicability of an exclusion, the burden shifts back to the insured to establish that an exception to the exclusion restores coverage. *Ewing Constr.*, 420 S.W.3d at 33; *Gilbert Tex. Constr.*, 327 S.W.3d at 124.

5.4     If a petition does not allege facts within the scope of coverage under the insurance policy, the insurer is not legally required to defend a suit against its insured. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002) (quoting *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997)); *see Pine Oak Builders*, 279 S.W.3d at 654; *Gen. Star Indem. Co. v. Gulf Coast Marine Assocs., Inc.*, 252 S.W.3d 450, 454 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Courts construe insurance policies "using ordinary rules of contract interpretation." *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). When doing so, courts must determine the parties' intent "as reflected in the terms of the policy itself." *Id.* at 257–58 (quoting *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009)). Courts must "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless." *Id.* at 258 (quoting *Gilbert Tex. Constr.*, 327 S.W.3d at 126). No phrase, sentence, or section should be isolated from its setting

and considered apart from other contractual provisions. *Id.* (quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)). Unless the policy itself dictates otherwise, courts "give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *Id.* (quoting *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015)).

5.5     If the court determines that only one party's interpretation of the policy is reasonable, the policy is unambiguous and the reasonable interpretation should be adopted. *Id.* If, however, the court determines that both parties' interpretations are reasonable, the policy is ambiguous. *Id.* The Texas Supreme Court has held:

> In that event, "we must resolve the uncertainty by adopting the construction that most favors the insured," and because we are construing a limitation on coverage, we must do so "even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent."

*RSUI Indem. Co.*, 466 S.W.3d at 118 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)); *see also Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 668 (Tex. 2008) (" 'Exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured,' and '[a]n intent to exclude coverage must be expressed in clear and unambiguous language.' ") (quoting *Nat'l Union* at 555).

5.6     " '[A]mbiguous' means more than simply 'denoting a lack of clarity in language,' " and an insurance policy is not ambiguous simply because the parties offer conflicting interpretations of the policy's provisions. *Nassar*, 508 S.W.3d at 258 (quoting *RSUI Indem. Co.*, 466 S.W.3d at 119). "A policy is ambiguous if it is genuinely subject to more than one meaning after applying the pertinent rules of contract interpretation." *Id.* When interpreting

language in an insurance policy, the court must determine whether the insured's interpretation is reasonable. *Id.* If it is, then the court must adopt the insured's interpretation, even if the insurer's interpretation is also, or more, reasonable. *Id.*; *RSUI Indem. Co.*, 466 S.W.3d at 119.

5.7     When construing an insurance policy, we should read the policy and its endorsements together "unless they are so much in conflict they cannot be reconciled." *TIG Ins. Co. v. N. Am. Van Lines, Inc.*, 170 S.W.3d 264, 271 (Tex. App.—Dallas 2005, no pet.). In the case of an irreconcilable conflict, endorsements to a policy generally supersede and control over conflicting printed terms contained within the main policy. *Id.*; *see also TIG Ins. Co. v. San Antonio YMCA*, 172 S.W.3d 652, 658 (Tex. App.—San Antonio 2005, no pet.) (stating that endorsements "often are issued to add coverages that otherwise would be excluded," but noting that endorsements "cannot be read apart from the main policy" and that added provisions in endorsements only supersede previous policy terms "to the extent they are truly in conflict").

5.8     In limited circumstances, extrinsic evidence may be considered in determining whether a duty to defend exists. Specifically, the rule adopted by the Texas Supreme Court for when extrinsic evidence may be used in determining an insurer's duty to defend is two-fold:

> 1.      Where it is initially impossible from the pleadings to discern whether coverage is potentially implicated; and
>
> 2.      Where the extrinsic evidence sought to be introduced goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case.

*GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305 (Tex. 2006).

5.9     These rules mean Great American lacks both any duty to defend and any duty to indemnify Monument. Great American has no duty to defend Monument because the claims

at issue in the Underlying Lawsuit fall outside the scope of coverage and the same reasons which negate the duty to defend also negate the duty to indemnify.

## VI.    ARGUMENT

**THE PETITION**

6.1    In the Underlying Lawsuit, the Underlying Plaintiffs assert claims for wrongful death and survival arising out of the drowning death of Decedent on November 7, 2018 in the swimming pool at Timber Run Apartments located at 13000 Woodforest Blvd., Houston, Texas 77015.  The Underlying Plaintiffs allege negligence, negligence *per se*, and gross negligence against Monument for:

- Failing to properly maintain its property;
- Failing to properly supervise its employees;
- Failing to hire, manage, train, and supervise competent employees;
- Failing to take appropriate and reasonable action to protect the decedent;
- Failing to provide adequate safety equipment;
- Failing to implement adequate safety policies and/or procedures;
- Failing to enforce adequate safety policies and/or procedures;
- Failing to have lifeguards on duty;
- Vicariously liability for the acts and/or omissions of their employees; and
- Other negligent, negligent *per se*, and/or grossly negligent acts/omissions.

6.2    The Underlying Plaintiffs seek damages for past and future pecuniary loss, loss of companionship and society, pain, mental anguish, medical expenses, funeral and burial expenses, and loss of inheritance.  The Underlying Plaintiffs also seek exemplary damages for willful, knowing, reckless or grossly negligent conduct.

**THE POLICY**

6.3     The Umbrella Policy issued to Monument provides as follows in the Insuring Agreements:

    I.     COVERAGE

        A.     We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "Insured" becomes legally obligated to pay as damages, by reason of liability imposed by law or assumed by the "Insured" under an "insured contract," because of:

            1.     "bodily injury" or "property damage" that takes place; … during the Policy Period and caused by an "occurrence" happening anywhere…

…

    V.     DEFINITIONS  …

        D.     "Bodily injury" means physical injury, sickness, or disease sustained by a person, including death resulting from any of those at any time. "Bodily injury" also means mental injury, mental anguish, humiliation, or shock sustained by a person, if directly resulting from a physical injury, sickness, or disease of that person.  …

        O.     "Occurrence" means:

            1.     as respects "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one "Occurrence"; …

6.4     The Umbrella Policy provides coverage for sums in excess of the "retained limit" (deductible) for which the "Insured" becomes legally obligated to pay as damages because of accidental "bodily injury" that takes place during the Policy Period.  As with all insurance policies, the umbrella coverage is subject to various endorsements, exclusions, and conditions.  Here, the "pool exclusion" in the Umbrella Policy applies to bar Great American's duty to defend/indemnify Monument for the claims asserted in the Underlying Lawsuit.  The "pool exclusion" in the Risk Purchasing Group Endorsement (form GAI 7241 07 12) states as follows:

    This endorsement modifies insurance provided under the following:

        COMMERCIAL UMBRELLA COVERAGE FORM

…

The following are added to Section IV. EXCLUSIONS:   …

**Swimming Pools**

Any "bodily injury," "personal injury," "advertising injury" or medical payments arising out of the ownership, maintenance, operation or use of a swimming pool unless

1)   if outdoors, the swimming pool is fenced with a self-closing or self-latching gate; or

2)   if indoors or on a roof-top, restricted access is through a self-closing and self-locking door; and

3)   the swimming pool's design or operation complies with the Virginia Graeme Baker Act.

With respect 1, 2 and 3 above, the swimming pool must meet or exceed all federal, state or local governing codes and regulations.

6.5     The Underlying Plaintiffs allege Monument was negligent, negligent *per se* and/or grossly negligent in failing to properly maintain its property, supervise its employees, hire/manage/train/supervise competent employees, take action to protect Decedent, provide adequate safety equipment, implement adequate safety policies/procedures, enforce adequate safety policies/procedures, and have lifeguards on duty.  All claims asserted by the Underlying Plaintiffs arise out of the drowning death of Decedent in the Timber Run Apartments pool (the "Pool").  However, the "pool exclusion" bars coverage for "bodily injury" and medical payments arising out of the ownership, maintenance, operation or use of a swimming pool.  Thus, the Insurance Claim asserted by Monument for a defense and indemnity in the Underlying Lawsuit is barred by the "pool exclusion."

6.6     There is an exception negating the "pool exclusion" for outdoor swimming pools if:  (a) the pool has self-closing or self-latching gates; and (b) the pool's design or operation complies with the VGBA; and (c) the pool meets or exceeds all federal, state or local governing codes and regulations.  However, the exception does not apply to the Insurance Claim because on the date of

the incident, the Pool did not meet the requirements of the exception for the reasons discussed below.

6.7     The Pool had a self-closing and self-latching gate, however, on or before the date of the incident, a padlock had apparently been inserted while the gate was open, essentially keeping the gate propped open by the padlock and thereby disabling the self-closing and self-latching mechanism.  *See* **Exhibit C**, photograph documented by the investigative police department produced in the underlying lawsuit.  Thus, the Pool did not meet part (a) of the exception to the "pool exclusion."

6.8     Great American is unaware if the Pool satisfied part (b) of the exception to the "pool exclusion" on the date in question.[1]  Regardless, the presence or absence of an anti-entrapment device required by federal law is not alleged as a cause of injury in the Underlying Lawsuit and does not appear to be at issue here.

6.9     Regarding (c), for the exception to the "pool exclusion" to apply, the Pool must also meet or exceed all federal, state or local governing codes and regulations.  First, federal requirements for pools are provided by the Virginia Graeme Baker Pool & Spa Safety Act, discussed in the preceding paragraph and footnote 1.

6.10    The state requirements for pool gates are found in Texas Health and Safety Code §757.004 which provides the following:

>  (a)     Except as otherwise provided by Section 757.005, a gate in a fence or wall enclosing a pool yard as required by Section 757.003 must:
>
>  (1)     have a self-closing and self-latching device;

---

[1] The Virginia Graeme Baker Pool & Spa Safety Act ("VGBA") became law on December 19, 2007.  15 U.S.C. 8001, *et seq.*  It was designed to prevent the hazard of drain entrapments and eviscerations in pools and spas.  The Act requires public pools and spas to be equipped with anti-entrapment devices or systems.  A public pool or spa is defined as one that is open to the public generally, whether for a fee or free of charge; including one at a multi-unit apartment building, apartment complex, residential real estate development, or other multi-family residential area.  Upon information and belief, the Timber Run Apartments pool met the VGBA regulations.

(2)     have hardware enabling it to be locked, at the option of whoever controls the gate, by a padlock or a built-in lock operated by key, card, or combination; and

(3)     open outward away from the pool yard.

(b)     Except as otherwise provided by Subsection (c) and Section 757.005, a gate latch must be installed so that it is at least 60 inches above the ground, except that it may be installed lower if:

(1)     the latch is installed on the pool yard side of the gate only and is at least three inches below the top of the gate; and

(2)     the gate or enclosure has no opening greater than one-half inch in any direction within 18 inches from the latch, including the space between the gate and the gate post to which the gate latches.

(c)     A gate latch may be located 42 inches or higher above the ground if the gate cannot be opened except by key, card, or combination on both sides of the gate.

At a minimum, the Pool failed to meet Tex. Health & Safety Code §757.004(a)(1) because on the date in question, the self-closing and self-latching mechanism was disabled because a padlock had been placed on the gate whilst the door was open.

6.11    Further, Texas Health and Safety Code §757.009 requires the owner of a multiunit complex to keep pool enclosures in good working order as follows (emphasis added):

INSPECTION, REPAIR, AND MAINTENANCE.

(a)     An owner of a multiunit rental complex or a rental dwelling in a condominium, cooperative, or town home project with a pool or a property owners association that owns, controls, or maintains a pool shall exercise ordinary and reasonable care to **inspect, maintain, repair, and keep in good working order the pool yard enclosures, gates, and self-closing and self-latching devices** required by this chapter and within the control of the owner or property owners association. …

(c)     An owner of a multiunit rental complex or a rental dwelling in a condominium, cooperative, or town home project with a pool or a property owners association that owns, controls, or maintains a pool shall inspect the pool yard enclosures, gates, and self-closing and self-latching devices on gates no less than once every 31 days.

(d)     An owner's or property owners association's duty of inspection, repair, and maintenance under this section may not be waived under any circumstances and may not be enlarged except by written agreement with a tenant or

> occupant of a multiunit rental complex or a member of a property owners
> association or as may be otherwise allowed by this chapter.

The presence of the padlock which prevented the gate from closing and latching was a blatant violation of the requirement to "…keep in good working order the…gates, and self-closing and self-latching devices" required by Texas Health and Safety Code §757.009.

6.12    Additionally, Texas Administrative Code Title 25, Chapter 265, Subchapter L, Rule 265.200(b) incorporates the requirements found in Chapter 757:

> Enclosures for post-10/01/99 or pre-10/01/99 Class C pools and spas and Class D
> pools at a Class C facility that are subject to Health and Safety Code, Chapter 757.
> A post-10/01/99 or pre-10/01/99 pool or spa that is subject to Health and Safety
> Code, Chapter 757 (covering pool yards and spa yards of apartments, property
> owner associations, and similar residential developments) shall have an enclosure
> as required in Chapter 757.

Rule 265.200(d) also prohibits pool gates from being propped open:

> Gates propped open prohibited. No pool or spa owner or his agent or employee may
> knowingly allow a gate in a pool yard or spa yard enclosure to be propped open or
> to remain propped open and no person may prop open such gate unless an agent,
> employee, or contractor of the owner is present and doing construction,
> maintenance, or repair work in the pool yard or spa yard or on its enclosure that
> reasonably requires the gate to be propped open.

Thus, on the date in question, the Pool also did not satisfy the above requirements of the Texas Administrative Code because the padlock effectively propped the pool gate open.

6.13    Regarding local governing codes and regulations, Harris County requires the owner of any property within the unincorporated areas of the county to have a valid pool permit.  Harris County does not have additional regulations for pool enclosures beyond the federal and state requirements above.  The Harris County Public Health department may permit and inspect public pools and spas in the unincorporated Harris County area,[2] but at this time, Great American is not aware of any

---

[2] https://publichealth.harriscountytx.gov/Services-Programs/All-Programs/Pool-Permits-and-Water-Safety

citations issued to Monument for the failure of the Pool to have a properly functional self-closing and self-latching gate.

6.14    Due to the bypassed gate closing and latching mechanism, the Pool was out of compliance with federal, state and local safety codes and standards, thus the Pool did not meet part (c) of the exception to the "pool exclusion."  Therefore, the "pool exclusion" applies to bar coverage for all claims asserted in the Underlying Lawsuit against Great American's insured, Monument.

**EXEMPLARY DAMAGES ARE BARRED**

6.15    Notwithstanding the foregoing, the Umbrella Policy excludes coverage for exemplary damages by endorsement (form GAI 6136 04 10):

> This insurance does not apply to any claim for or award of:
>
> (a)    punitive damages,
>
> (b)    exemplary damages,
>
> (c)    treble damages, or
>
> (d)    damages intended to punish or deter misconduct, rather than to compensate for harm.

Thus, the Umbrella Policy does not provide coverage for any claims for exemplary or punitive damages, so those claims are barred.

## VII.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Great American prays that the Court will, upon a final hearing, enter a declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.*, regarding the rights and obligations between Great American and Defendants, namely:

1.    There is no coverage for the Underlying Lawsuit under the Umbrella Policy due to the relevant policy conditions, exclusions, or endorsements;

2.    There is no duty to defend Monument for the claims asserted in the Underlying Lawsuit under the Umbrella Policy;

3.      There is no duty to indemnify Monument for the claims asserted in the Underlying Lawsuit under the Umbrella Policy; and

4.      The Underlying Plaintiffs are not entitled to any claim benefits or payments under the Umbrella Policy, including but not limited to monetary payments, attorney's fees, costs and/or expenses of any kind.

Respectfully submitted,

MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.

*s/Christopher W. Martin*

Christopher W. Martin
State Bar No. 13057620
Federal ID No. 13515

808 Travis Street, Suite 1100
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101
martin@mdjwlaw.com

**ATTORNEY FOR PLAINTIFF
GREAT AMERICAN ALLIANCE
INSURANCE COMPANY**